■ THOMAS WINANT, Appellant, v. APPROVED LADDER & EQUIPMENT CORPORATION, Respondent.— In an action to recover damages for personal injuries, plaintiff appeals from a judgment of the Supreme Court, County of Nassau, dated September 25, 1967, in favor of defendant upon the trial court's dismissal of the complaint at the end of plaintiff's case in a jury trial. Judgment affirmed, with costs. On August 26, 1963 plaintiff and one Kiely were partners in a roofing business. On that day Kiely, acting on behalf of the partnership, rented a 60-foot wooden extension ladder from defendant by signing a standard printed form entitled "Rental and Release of Liability Agreement". The face of the form refers to defendant as the party of the first part and to Kiely as the party of the second part, describes the ladder and states the sums charged by defendant for its rental. Underneath the provisions for the rental charges the following statements appear in bold print: "Approved Ladder & Equipment Corp. is not to be held liable for any accidents. Examine equipment daily before using". Underneath this the following printed statement appears: "It is hereby agreed and stipulated that in the event that this lease is not signed by the principal said party of the second part, then the person actually signing agrees that he is signing as agent for said party of the second part. IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written. I/We agree to and understand all terms and conditions as set up above.— AND SUBJECT ALSO TO CONDITIONS ON REVERSE SIDE ". Underneath the phrase "AND SUBJECT ALSO TO CONDITIONS ON REVERSE SIDE ", appears Kiely's signature. On the back of the form appear, under the bold-type caption " CONDITIONS ", eighteen printed paragraphs, each of different length and all in uniformly

small but legible type. Among the conditions, in language effective for defendant's purpose, and upon which defendant relied in the trial court, are provisions by which "the party of the first part" disclaimed all warranties, express or implied, and a covenant by "the party of the second part" not to sue "the party of the first part" for damages "arising out of any negligence of the party of the first part." On the day following Kiely's rental of the ladder, plaintiff was injured when, according to his proof, the ladder's second section collapsed and caused him to fall from its overhead, extended third section. In our opinion, though the jury could have found that defendant breached the implied warranty of fitness for the use intended by plaintiff and Kiely, and was negligent in failing to discover the latent defect concerning which plaintiff's expert testified, nevertheless judgment was properly given to defendant at the close of plaintiff's proof, on the ground that defendant's agreement with Kiely included the disclaimers of warranties and covenant not to sue, printed on the back of the rental form. As a matter of law, a reasonable man would have understood both that the rental form was a proposed contract and that the provisions printed on the back of the form were part of that proposed contract (see *Matter of Philip Export Corp.* [*Leathertone, Inc.*], 275 App. Div. 102, 105; 1 Williston, Contracts [3d ed.], § 90A; Restatement, Contracts, § 70; 63 Harv. L. Rev. 494 [1950]). We did not intend to imply in *Putzer* v. *Vic-Tanny-Flatbush* (20 A D 2d 821) that an exculpatory clause printed in legible fine-print on the back of a standard form contract was ineffective unless the offeror proved that the offeree had actual knowledge of the clause. Rabin, Acting P. J., Hopkins, Benjamin and Munder, JJ., concur; Martuscello, J., dissents and votes to reverse the judgment and to grant a new trial, with the following memorandum: Although the covenant not to sue and the clause exculpating defendant from liability for negligence may be binding upon the partnership itself and the partner who actually signed the agreement, I do not think that these clauses can be said to constitute a waiver by plaintiff, the nonsigning partner, of his personal right to recover from defendant for injuries sustained by reason of defendant's negligence. It might be argued that Kiely signed the agreement as plaintiff's agent and that, since plaintiff was present at the time of execution, Kiely had at least apparent authority to bind plaintiff personally; however, it does not appear that even Kiely had actual knowledge of the conditions. It is one thing to impute knowledge of these conditions to the party who executed the agreement, but to impute such knowledge to a non-signatory is harsh and unreasonable.